UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

_____

JOHNNIE AMES,

                          Plaintiff,

v.                                              Case No. 17-cv-458-pp

KENOSHA COUNTY CORRECTIONAL
HEALTH SERVICES, *et al.*,

                          Defendants.

_____

**ORDER SCREENING PLAINTIFF'S AMENDED COMPLAINT (DKT. NO. 11)**
_____

Plaintiff Johnnie Ames was an inmate at the Kenosha County Detention Center when he filed a complaint under 42 U.S.C. §1983. Dkt. No. 1. On June 13, 2018, the court issued an order screening his complaint and finding that it did not state a claim. Dkt. No. 10. The court gave him the opportunity to amend, and the plaintiff took that opportunity. This order screens the plaintiff's amended complaint. Dkt. No. 11.

**I.    Screening the Plaintiff's Complaint**

    *A.    Standard for Screening Complaints*

The law requires the court to screen complaints, including amended complaints, brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim under 42 U.S.C. §1983, a plaintiff must allege that 1) someone deprived him of a right secured by the Constitution or laws of the United States; and 2) whoever deprived him of that right was acting under color of state law. Buchanan-Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court gives a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

B.  *Facts Alleged in the Amended Complaint*

The plaintiff is suing Kenosha County Correctional Health Services; Correctional Health Department HSU; Kenosha County Medical Staff; one nurse practitioner; nurse staff of Kenosha County Correctional; nurse staff of Kenosha Detention Center; "nurse without a name"; Officers "ISAAC" and "#2"; officers in intake; nurse who said to use hot water; and nurse without a name. Dkt. No. 11 at 1-2.

The plaintiff was taken into custody on November 4, 2016. Id. at 6. While in custody, he was seen by Kenosha County Detention Center medical staff, who asked the plaintiff about his medical needs and what pharmacy he used. Id. He told a nurse practitioner that he is a diabetic, has high blood pressure, a

2

brain aneurysm and high cholesterol. Id. He provided the information about his pharmacy. Id. He was given diabetes medication, but no other medication. Id. On November 9, 2016, he asked nursing staff how he could get all the medication he'd listed. Id. He alleges he was extremely fatigued and dehydrated and getting up three to four times a night to use the bathroom, without knowing why. Id.

The plaintiff says that he was in custody for thirty days without receiving medication for his neuropathy or his aneurysms. Id. at 7. He also alleges that the medication he was given for his diabetes was not the medication he'd been on for the last ten years. Id. The plaintiff alleges that in thirty-two days, he only went to "rec" four times. Id. at 11. He notes that medication, diet, and exercise are a "big part" of maintaining his medical condition. Id. He also alleges that he had his blood pressure checked only twice, id. at 13, and that the pain from his neuropathy woke him up, id. at 10. (He explains that highs and lows of blood glucose can contribute to restless sleep, as well as to frequent urination, headaches and hunger and night sweats. Id. at 10.) He said that the first time his blood pressure was checked was on November 16, 2016—about two weeks after he was taken into custody—at the 8:00 p.m. sick call by a nurse named Jessica. Id. at 11.

On November 14, 2016, the plaintiff put in a medical request to get his medication for his high blood pressure, neuropathy, aneurysms and high cholesterol. Id. at 12. He put in another request the next day, stating that he was having a problem going to the bathroom, and when he did go, it would be at night (affecting his sleep). Id. Three days later, he put in a request form to see a doctor about the medication, and he was put on sick call. Id. at 12, 13.

The plaintiff alleges that on November 19, 2016, the nail clippers were on

his unit. Id. at 5. He saw twenty-four inmates use the clippers without disinfecting them; the officers did not pass out disinfectant. Id. Because the plaintiff is a diabetic, he "can't just grab a pair of clippers and cut away like most people. Id. The plaintiff alleges that on November 20, 2016, he put in a medical request about getting his nails cut. Id. at 12, 16. The plaintiff told health services he was concerned about the risk of getting an infection, and he "was told by someone in the Kenosha County Correctional Health Services" to wash the clippers with soap and hot water. Id. at 16. He also says that the day after he put in his request, "a nurse" told him to "please wash off the nail clippers with soap and hot water;" he says that there was no signature on the nurse response. Id. at 5. The plaintiff alleges that "you" are told that if you refuse to clip your nails, you'll be "put on restriction or be thrown in . . . the hold." Id.

Two days after that, the plaintiff asked to be put on the sick call list to find out how to get his nails cut without contracting an infection. Id. at 12. The plaintiff saw "the nurse" on November 22, 2016, and she told the plaintiff she would order his medication. Id. He did not receive his medications until November 29, 2016. Id. On November 24, 2018, he submitted a grievance about not receiving "appropriate medical." Id. He received a response the next day, saying his complaint was unfounded. Id.

On November 25, 2016, the plaintiff put in another medical request about his legs being swollen. Id. He did not receive any help. Id. On November 28, 2016, he put in a medical request for specialized diabetic socks that would help with his feet. Id. At that time, he was told that his gabapentin (a medicine for nerve pain) would start the next morning. Id. The plaintiff put in another request on November 30, 2018, this time saying that the socks hurt his feet

4

because they balled up inside the flip-flops and the seams hurt. Id. He put in another request on January 2, 2017, asking for an MRI. Id. He was told that the nurse practitioner would follow up, but that never happened. Id. The plaintiff indicates that on January 20, 2017, he was having problems going to the bathroom. Id. at 12, 15. He alleges that on March 12, 2017, he put in another medical request for problems with his stomach. Id. at 15.

The plaintiff did not number the pages of his complaint. It appears that the pages may have landed on the docket in a different order than the one in which he wrote them. For example, at the bottom of the page docketed as page 5, the plaintiff starts this sentence: "On Monday 11-21-16 At the 8:00pm on the unit sick call I . . ." Id. at 5. The court cannot find another page that appears to contain the end of that sentence. The same thing happens at the bottom of the page docketed as page 12; the plaintiff began a sentence with, "On 01-20-17 I'm having . . ." Id. at 12. The court believes, although it can't be sure, that this sentence completes on the page docketed as page 15, which begins " . . . problem with going to the bathroom." Id. at 15. Finally, at the bottom of the page docketed as page 17, the plaintiff begins a sentence with "Walking, standing are my punishing these routine forces produce lasting damage this is what changes how my . . . ." Id. at 17. Again, the court cannot find another page that appears to contain the end of that sentence. There is also one page of the plaintiff's complaint that the court cannot put into context. On the page docketed as page 8, the plaintiff alleges that he asked a nurse her name and "she replied nurse[,] which puzzled [him] seriously." Id. at 8. Two officers were on the unit, one of whom was named "ISAAC." Id. He then alleges that the nurse, "as she call[ed] herself," was working the 8:00 p.m. Monday

sick call and had her name on backward, and that she was the same nurse working the 5:00 am sick call on November 22, 2016. Id.

  C. *Legal Analysis of the Allegations in the Complaint*

 As did his original complaint, the plaintiff's amended complaint implicates his right to be free from cruel and unusual punishment by receiving adequate medical care. He explains that at the time of these events, he was a pretrial detainee, id. at 3; this means that his right to receive adequate medical care arises under the Fourteenth Amendment. See Arnett v. Webster, 658 F.3d 742, 750 (7th Cir. 2011); see also Minix v. Canarecci, 597 F.3d 824, 830-31 (7th Cir. 2010) (explaining that the same standard applies to a deliberate indifference claim based on medical care whether it is analyzed under the Eighth or Fourteenth Amendment).

 As he did in the original complaint, the plaintiff has sued "Kenosha County Correctional Health Services" and "Correctional Health Department HSU" as defendants. Id. at 2. As the court explained in its previous order, neither of these defendants is an independent legal entity, which means that they cannot be sued under §1983. While a plaintiff cannot state a §1983 claim against departments within a municipal organization, he *may* state a claim against the municipality itself (here, Kenosha County), but only if the constitutional violation was the result of a municipal policy or practice. Palka v. Shelton, 623 F.3d 447, 455 (7th Cir. 2010) (citing Christensen v. Cty. of Boone, 483 F.3d 454, 465 (7th Cir. 2007)). The plaintiff has not alleged that Kenosha County had a custom, policy or practice of denying inmates adequate medical care, or being deliberately indifferent to their serious medical needs.

 Perhaps the plaintiff has sued "Kenosha County Correctional Health Services" and "Correctional Health Department HSU" because he believes that

those departments can be held liable for the actions (or lack of action) of their employees. They cannot be. As the court explained in its prior order, §1983 limits liability to public employees who are personally responsible for a constitutional violation. Burks v. Raemisch, 555 F.3d 592, 595-96 (7th Cir. 2009). To hold someone liable under §1983, a plaintiff must show that that person personally caused or participated in a constitutional violation. Hildebrandt v. Ill. Dept. of Nat. Res., 347 F.3d 1014, 1039 (7th Cir. 2003). A plaintiff can show that someone's supervisor is liable under §1983 only if he can show that the constitutional deprivation occurred at the supervisor's direction or with the supervisor's knowledge and consent. Id. In other words, the supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." Id. (quoting Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995)). Again, the plaintiff's complaint does not identify any supervisors, or allege that supervisors working at Kenosha County Correctional Health Services or Correctional Health Department HSU knew that employees were violating his constitutional rights and either turned a blind eye or approved those violations. The court will dismiss these defendants.

The court next considers whether the plaintiff's complaint states claims against any individuals. To state claim based on deficient medical care, a plaintiff must demonstrate two elements: (1) that he had an objectively serious medical condition; and (2) that there were individual jail officials who showed deliberate indifference to that condition. Arnett v. Webster, 658 F.3d 742, 750 (7th Cir. 2011) (citing Johnson v. Snyder, 444 F.3d 579, 584 (7th Cir. 2006)); see also Minix v. Canarecci, 597 F.3d 824, 830-31 (7th Cir. 2010) (explaining that the same standard applies to a deliberate indifference claim based on medical care whether it is analyzed under the Eighth or Fourteenth

7

Amendment). To show that an individual was deliberately indifferent, the plaintiff must demonstrate that the defendant knew about the harm or the risk of harm and did nothing about it. Roe v. Elyea, 631 F.3d 843, 857 (7th Cir. 2011).

The court concludes that the plaintiff has stated one claim for deliberate indifference, against the unidentified nurses who were responsible for the delay in receiving his medication. For the purposes of this opinion, the court assumes that the plaintiff had more than one serious medical condition: diabetes, high blood pressure, painful neuropathy and aneurysms. The plaintiff alleges that he told a nurse practitioner that he had these conditions. Dkt. No. 11 at 6. He doesn't say when he provided the nurse practitioner with this information, but as of five days after he had arrived at KCDC, he had received only diabetes medication (which was not his regular medication), and no medication for any of the other conditions. Id. He alleged that he was in custody for thirty days without receiving medication for the neuropathy or the aneurysms. Id. at 7. He alleges that he asked for the medications on November 14, 2016 (ten days after going into custody) and November 18, 2016 (twelve days after going into custody). Id. at 12. On November 22—eighteen days after he went into custody—a nurse told him that the nurse would put in for his medication, but he did not receive it until November 29 (it is not clear to the court what medication the plaintiff received on the 29th, two weeks after he went into KCDC). Id. at 13. One way or the other, the plaintiff has stated a claim that on several occasions, he made medical staff aware that he had serious conditions and needed his medications, but that he did not receive them.

When a deliberate indifference claim is based on a medication delay, it is not the delay itself that forms the basis of the harm necessary for the claim. Jackson v. Pollion, 733 F.3d 786, 790 (7th Cir. 2013). Instead, the harm must come from the consequences of not receiving the medication. Id. The plaintiff alleges that he suffered fatigue, dehydration, frequent urination, mood swings and blurry vision as a result. At the screening stage, the court is obligated to construe the plaintiff's allegations broadly. The court is satisfied that his complaints sufficiently allege deliberate indifference on the part of the nurses who were responsible for the delay in his receiving his medications.

The plaintiff's other complaints do not state claims. He expresses concern that staff—one nurse in particular—told him he could sterilize the nail clippers by washing them with soap and hot water. This is not deliberate indifference—he asked how to cut his nails without getting infected and the staff told him. Perhaps he disagrees with the advice the nurse gave him, but disagreement is not sufficient to state a claim for deliberate indifference. Snipes v. DeTella, 95 F.3d 586, 591 (7th Cir. 1996) (quoting Warren v. Fanning, 950 F.2d 1370, 1373 (8th Cir. 1991)). The court will dismiss "nurse who said to use hot water" as a defendant.

The plaintiff says that on November 28, he asked for diabetes socks; he says that on November 30, he complained about those socks hurting his feet. Dkt. No. 11 at 12. This shows that the staff did provide the plaintiff with the socks, and he doesn't explain what did or didn't happen when he complained about the socks. He says he complained about his legs swelling, but didn't get any help; this is not sufficient, alone, to state a deliberate indifference claim. He says he made medical requests about getting an MRI, having trouble going

to the bathroom and having stomach troubles, but doesn't explain what, if anything, happened after he made those requests.

Similarly, the plaintiff has not stated a claim against Officer ISAAC and Officer #2. The only allegations he made against these two officers was that they were present when a nurse told the plaintiff that her name was "nurse," and that they laughed at that. While this event may have offended the plaintiff, that is not enough to state a claim for a constitutional violation. The court will dismiss Officer ISAAC and Officer #2 as defendants. Nor has he made specific claims of wrongdoing against "1 nurse practitioner," or "officers in intakes."

The court will allow the plaintiff to proceed on a single deliberate indifference claim against the unknown nurses who were responsible for the delay in receiving his medication. For efficiency's sake, the court will direct the clerk's office to list these defendants in the docket as Unknown Nurse 1, Unknown Nurse 2, and Unknown Nurse 3, rather than "nurse staff" or "nurse without a name" or "medical staff."

Because the plaintiff does not know the names of any of the nurses he is suing, the court will add Kenosha County Sheriff David Beth as a defendant for the limited purpose of helping the plaintiff identify the real names of the nurses. See Donald v. Cook Cty. Sheriff's Dept., 95 F.3d 548, 556 (7th Cir. 1996).

The court will order the the U.S. Marshal to serve Sheriff Beth with the plaintiff's second amended complaint and a copy of this order. Sheriff Beth does not have to respond to the plaintiff's amended complaint. After Sheriff Beth's attorney files an appearance in this case, the plaintiff may serve discovery upon Sheriff Beth (by mailing it to his attorney at the address in the

attorney's notice of appearance) to get information that will help him identify the real names of the Unknown Nurse defendants.

For example, the plaintiff may serve interrogatories (written questions) under Fed. R. Civ. P. 33 or document requests under Fed. R. Civ. P. 34. Because the plaintiff has not stated a claim against Sheriff Beth, the plaintiff must limit his requests to asking for information or documents that will help him learn the real names of the nurses who saw him between November 4, 2016 and December 6, 2016. The plaintiff many not ask Sheriff Beth questions about any other topic, and Sheriff Beth is not obligated to respond to requests about any other topic.

After the plaintiff identifies the real names of the Unknown Nurse defendants, he must file a motion to substitute the real names for the Unknown Nurse placeholders. Once he does that, the court will dismiss Sheriff Beth as a defendant. Once the plaintiff identifies the Unknown Nurse defendants and they have had an opportunity to respond to the plaintiff's second amended complaint, the court will set a deadline for discovery. At that point, the plaintiff may use discovery to get the information that he believes he needs to prove his claims.

The plaintiff must identify the real names of the Unknown Nurse defendants within forty-five days of the date Sheriff Beth appears in the case. If the plaintiff does not notify the court of the identities of the nurses by that time, or not explain to the court why he is unable to identify their real names, the court may dismiss his case based on his failure to diligently pursue it. Civil L.R. 41(c).

### III. Conclusion

The court **ORDERS** that defendants Kenosha County Correctional Health

11

Services, Correctional Health Department HSU, Kenosha County Medical Staff, nurse practitioner, Officer Isaac, Officer #2, Officers in Intake and the nurse who said to use hot water are **DISMISSED**. The court directs the clerk of court to list the remaining defendants as Unknown Nurse 1, Unknown Nurse 2 and Unknown Nurse 3.

The court **ORDERS** the United States Marshal to serve a copy of the amended complaint and this order on Sheriff David Beth under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). The U.S. Marshals will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee.

The court **ORDERS** that Sheriff Beth does not have to respond to the plaintiff's amended complaint; however, he must respond to the plaintiff's discovery requests as described in this order.

The court **ORDERS** the plaintiff to identify the real names of the Unknown Nurse defendants within forty-five days of the date that Sheriff Beth appears in the case. If he does not provide the court with the real names of the nurses by that time, or explain why he has been unable to do so, the court may dismiss his case based on his failure to diligently pursue it. Civil L.R. 41(c).

The court will issue a separate order **REFERRING** this case to Magistrate Judge Nancy Joseph for all pretrial proceedings.

The court **ORDERS** that the plaintiff shall submit all correspondence and legal material to:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he does not file documents or take other court-ordered actions by the deadlines the court sets, the court may dismiss his case for failure to prosecute it. The parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, which could affect the legal rights of the parties.

Dated in Milwaukee, Wisconsin this 14th day of January, 2019.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER
United States District Judge**